KENDALL BRILL & KELLY LLP
Robert E. Dugdale (167258)
 *rdugdale@kbkfirm.com*
Jeffrey M. Chemerinsky (270756)
 *jchemerinsky@kbkfirm.com*
10100 Santa Monica Blvd., Suite 2500
Los Angeles, California 90067
Telephone: 310.556.2700
Facsimile:  310.556.2705

Attorneys for Defendant Erik Fleming

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>ERIK FLEMING,<br><br>　　　　Defendant. | Case No. 2:24-cr-00417-SPG-1<br><br>**DEFENDANT ERIK FLEMING'S RESPONSE TO THE GOVERNMENT'S SENTENCING MEMORANDUM [DKT. 43]**<br><br>**Date:　May 13, 2026**<br>**Time:　10:00 a.m.**<br>**Crtm:　5C**<br><br>Judge:　Sherilyn Peace Garnett<br>Crtm:　5C |

604498336

DEFENDANT ERIK FLEMING'S RESPONSE TO GOVERNMENT'S SENTENCING MEMORANDUM

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................................ 1

II.   MR. FLEMING'S COOPERATION DESERVES GREATER
      CONSIDERATION THAN THE FIVE LEVELS OF CREDIT
      RECOMMENDED BY THE GOVERNMENT ............................................... 5

III.  THE GOVERNMENT'S SENTENCING RECOMMENDATION
      UNDERVALUES MR. FLEMING'S MITIGATING FACTORS AND
      OVERVALUES PURPORTED AGGRAVATING FACTORS THE
      GOVERNMENT CITES ............................................................................ 7

      A.   The Government Ignores the Exceptional Mitigating Factors
           Present in Mr. Fleming's Case, Including § 3553 Factors that the
           Court Must Consider ...................................................................... 7

      B.   The Government Overstates the Purported Aggravating Factors
           It Claims Justifies Its Sentencing Recommendation ........................... 11

IV.   CONCLUSION ....................................................................................... 14

Kendall Brill
& Kelly LLP

10100 Santa Monica Blvd.
Suite 2500
Los Angeles, CA 90067

604498336                                       i

DEFENDANT ERIK FLEMING'S RESPONSE TO GOVERNMENT'S SENTENCING MEMORANDUM

# TABLE OF AUTHORITIES

**Page(s)**

**Statutes**

18 U.S.C. § 3553 ................................................................................................................ 13

18 U.S.C. § 3553(a) ..................................................................................................... 1, 5, 7

18 U.S.C. §  3553(a)(1) ................................................................................................... 7, 9

U.S.S.G. § 2D1.1 ............................................................................................................. 12

U.S.S.G. § 2D1.1(c)(16) .................................................................................................. 12

U.S.S.G. § 5K1.1 ....................................................................................................... 3, 5, 10

U.S.S.G. § 5K1.1(a)(1)-(5) ................................................................................................ 4

**Other Authorities**

www.ussc.gov/sites/default/files/pdf/research-and-publications/federal-
    sentencing-statistics/state-district-circuit/2025/cac25.pdf ................................. 13

**Kendall Brill
& Kelly LLP**

10100 Santa Monica Blvd.
Suite 2500
Los Angeles, CA 90067

604498336

ii

DEFENDANT ERIK FLEMING'S RESPONSE TO GOVERNMENT'S SENTENCING MEMORANDUM

## I.    INTRODUCTION

Sentencing must encompass all relevant factors, not just those the government deems aggravating, and by ignoring every mitigating fact in Erik Fleming's case, the government's § 3553(a) analysis—and by extension its recommended sentence—falls short by default.  In this vein, the government not only gives no weight to, but completely fails to acknowledge, a number of substantial mitigating facts that merit favorable consideration by this Court, including:  (1) Mr. Fleming's unique status among federal drug defendants as someone whose only involvement in selling drugs over the course of his entire life consisted of serving as the middleman in three transactions involving personal use quantities of a Schedule III Controlled Substance in the span of 11 days to a single customer; (2) a criminal history yielding a Criminal History Score of zero; (3) how Mr. Fleming was recruited into participating in his offense conduct by a trusted friend at a low point in his life and engaged in completely aberrational conduct, when compared to his lifetime of displaying kindness to others, due to exercising extremely poor judgment while facing uniquely dire circumstances; (4) Mr. Fleming's profound remorse, which he has exhibited over the past two years through his actions and not merely through sincere words of regret; and (5) Mr. Fleming's exceptional post-offense rehabilitation, which has seen him not only fiercely tackle his own drug addiction but also help others do the same.  Notably, the government does not even make passing reference to several specific § 3553(a) factors that undisputedly weigh in Mr. Fleming's favor—including his overwhelmingly positive background, the lack of any future danger he poses to the public, and the absence of any need for a long custodial sentence to specifically deter Mr. Fleming from reoffending.  In short, the thorough § 3553(a) analysis this Court must conduct justifies a far lower sentence than the 30 month sentence recommended by the government.

In lieu of giving even the slightest nod to these factors, the government's sentencing recommendation rests heavily on a handful of different particulars the

Kendall Brill
& Kelly LLP

10100 Santa Monica Blvd.
Suite 2500
Los Angeles, CA 90067

604498336

1

DEFENDANT ERIK FLEMING'S RESPONSE TO GOVERNMENT'S SENTENCING MEMORANDUM

government classifies as "aggravating," but that characterization not stand up to scrutiny.  The government's repeated call for this Court to treat as aggravating Mr. Fleming's background as an addiction counselor—a role in which he has helped hundreds of addicts, like himself, through their recovery—is hardly that.  Unlike Dr. Salvador Plasencia and Dr. Mark Chavez, who used their credentials as physicians to obtain and distribute ketamine to Matthew Perry, Mr. Fleming did not utilize his role as a drug counselor in any way to further his offense conduct.  And the notion that Mr. Fleming had greater insight into the dangers of drug addiction than others as a result of working as a drug counselor is also of no particular moment, as that type of awareness is present in every drug trafficking case and is not at all unique to drug counselors, as few in society can credibly claim ignorance as to the dangers of drug use and addiction.[1]

The government's attempts to portray other factors that are standard fare in the drug trade as aggravating should gain no greater traction.  Every person involved in drug dealing—from wholesale distributors to street dealers, to bit players in drug transactions, like Mr. Fleming—is engaged in that activity with the hope of making money.  Thus, the fact that Mr. Fleming acknowledged that he engaged in dealing drugs for the only time in his life in order to make money during a particular desperate time in his life is not aggravating; it is a function of how drug markets function.  What is actually relevant in this regard is the scale and duration of this detour Mr. Fleming took from his otherwise law-abiding life to profit from his

---

[1]  Nor did Mr. Fleming's role as a drug counselor provide him with anything akin to the unique insight into the danger that ketamine use posed to Mr. Perry possessed by Dr. Chavez (a medical doctor), Dr. Plasencia (a medical doctor who personally witnessed Mr. Perry experience severe medical distress during one episode in which he used ketamine), Kenneth Iwamasa (Mr. Perry's personal assistant, who witnessed the impact of Mr. Perry's drug addiction daily), and Jasveen Sangha (a large-scale, poly-drug trafficker who had previously sold ketamine to a customer who died after using it).

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 2500
Los Angeles, CA 90067

604498336

2

DEFENDANT ERIK FLEMING'S RESPONSE TO GOVERNMENT'S SENTENCING MEMORANDUM

conduct:  three transactions taking place over 11 days involving quantities of ketamine intended for a single person, where Mr. Fleming pocketed a total of approximately $2,000.[2]  That is the full universe of Mr. Fleming's drug dealing history.  And, while the fact that Mr. Perry died after Mr. Iwamasa repeatedly injected him with the ketamine that Ms. Sangha supplied, and that Mr. Fleming delivered to Mr. Iwamasa, is clearly a very aggravating fact, it is also a factor completely captured by the Sentencing Guideline factors that serve as a starting point for the Court's sentencing analysis, so accounting for it twice—once by considering Mr. Fleming's advisory Sentencing Guideline range and a second time as an independent aggravating factor—would yield undue punishment in Mr. Fleming's case.

On top of the government's flawed balancing of the aggravating and mitigating factors to conjure up its recommended sentence in Mr. Fleming's case— an analysis that forgets there are two sides to a scale—the government's sentencing recommendation drastically understates the breadth of the substantial assistance Mr. Fleming furnished to the government and consequentially undersells the value of Mr. Fleming's cooperation by recommending only a five-level departure under U.S.S.G. § 5K1.1, as opposed to the greater sentencing consideration Mr. Fleming earned through the cooperation he provided.  Even though the government was obligated, pursuant to the terms of its plea agreement with Mr. Fleming, to bring "the nature and extent" of Mr. Fleming's cooperation to the Court's attention, the government's description of the indisputably critical cooperation Mr. Fleming

---

[2]   The argument that Mr. Fleming's offense was driven by some sort of ravenous greed holds particularly little water when one compares his conduct with that of Dr. Chavez and Dr. Plasencia, who charged Mr. Perry tens of thousands of dollars for the ketamine they unlawfully diverted to him and gleefully texted "I wonder how much this moron will play" when addressing how much they could profit by fueling Mr. Perry's ketamine addiction.

Kendall Brill
& Kelly LLP

10100 Santa Monica Blvd.
Suite 2500
Los Angeles, CA 90067

604498336

3

DEFENDANT ERIK FLEMING'S RESPONSE TO GOVERNMENT'S SENTENCING MEMORANDUM

provided is limited to less than a single page in the government's 13-page sentencing memorandum. Mr. Fleming's cooperation merits more than this short shrift. Mr. Fleming identified Ms. Sangha—the most culpable defendant in this case by a long-shot—as the source of the ketamine that killed Mr. Perry; he provided the totality of the probable cause to search Ms. Sangha's drug stash house, which resulted in a seizure of evidence that helped dictate Ms. Sangha's sentence, on top of preventing the continued distribution of her dangerous inventory of drugs; he helped the government secure the conviction of Ms. Sangha as a result of his role as the only cooperating defendant in this case who could directly tie her to the ketamine sales that resulted in Mr. Perry's death; he provided valuable information concerning the involvement of Mr. Iwamasa in this case—another defendant the government has acknowledged bears more culpability than Mr. Fleming; and he handed the government sufficient evidence to prosecute Individual #1 and Individual #2 for their involvement in distributing ketamine to Mr. Perry had the government chosen to pursue charges against either or both of them.

While Mr. Fleming is grateful that the government has acknowledged his cooperation to some extent, its recommended departure—which has the functional effect of lowering his Sentencing Guideline range by only <u>four</u> offense levels given the government's bottom-line sentencing recommendation of 30 months—is unfairly stingy. Moreover, the government's departure recommendation—unlike that offered by Mr. Fleming—is completely untethered to any analysis, including any hint as to why five levels is an appropriate reduction upon application of the five considerations set forth at U.S.S.G. § 5K1.1(a)(1)-(5). *See contra.* Fleming Sentencing Position Paper, dated April 29, 2026, at pp. 27-32  And while it may be the case that a court should ordinarily give substantial weight to the government's evaluation of the significance and usefulness of a defendant's assistance in weighing the first of these five considerations, that cannot be the case when, as here, the government has not provided any basis for its evaluation and has offered only a

**Kendall Brill & Kelly LLP**

10100 Santa Monica Blvd.
Suite 2500
Los Angeles, CA 90067

604498336

4

DEFENDANT ERIK FLEMING'S RESPONSE TO GOVERNMENT'S SENTENCING MEMORANDUM

perfunctory description of the cooperation provided in the first place.

For each of these reasons, and those explained briefly below, when this Court takes into account all of the relevant factors it must when imposing Mr. Fleming's sentence, a sentence of three months' imprisonment followed by nine months in a residential drug treatment program is an appropriate sentence that reflects Mr. Fleming's culpability, honors his extraordinary cooperation, accounts for his genuine rehabilitation, and satisfies the purposes of 18 U.S.C. § 3553(a).

## II.  MR. FLEMING'S COOPERATION DESERVES GREATER CONSIDERATION THAN THE FIVE LEVELS OF CREDIT RECOMMENDED BY THE GOVERNMENT

The government has only recommended a five-level departure to account for the significant cooperation Mr. Fleming provided in the investigation and prosecution of others, including others substantially more culpable than himself. There are a number of facts, all touching upon factors identified in U.S.S.G. § 5K1.1, which show why Mr. Fleming's cooperation merits greater consideration than where the government has landed here, including the following:

(1)    Mr. Fleming provided substantial assistance that resulted in an extraordinary yield to the government during his very first encounter with law enforcement in this case, and did so uncounseled and without knowing anything about the long-term consequences he faced as a result of admitting his own culpability in serious criminal conduct and cooperating against others far more culpable than himself;

(2)    The assistance Mr. Fleming provided to the government, again, during his very first encounter with law enforcement in this case, resulted in the identification of the person who was, by far, the most culpable individual prosecuted by the government and supplied the probable cause to search her residence, which itself resulted in the seizure of almost two kilograms of methamphetamine, ketamine supplied by a poly-drug trafficker who had already distributed ketamine resulting in the deaths of two individuals, and evidence that further established Ms. Sangha was

Kendall Brill
& Kelly LLP

10100 Santa Monica Blvd.
Suite 2500
Los Angeles, CA 90067

DEFENDANT ERIK FLEMING'S RESPONSE TO GOVERNMENT'S SENTENCING MEMORANDUM

a significant drug distributor;

(3)    The cooperation Mr. Fleming provided to the government resulted in the only direct evidence the government obtained in the course of its investigation to convict Ms. Sangha in this extremely high profile case;

(4)    The only reason the extent of Mr. Fleming's cooperation did not extend into testifying against those who he cooperated against was that the cooperation Mr. Fleming provided was so forceful—including providing and being able to testify about damning text messages involving Ms. Sangha, Mr. Iwamasa, and others that Ms. Sangha instructed Mr. Fleming to destroy—that the government was able to build unassailable cases against those individuals with Mr. Fleming's assistance;

(5)    Mr. Fleming provided truthful information to the government during his very first encounter with law enforcement and thereafter into the criminal conduct engaged in by Mr. Iwamasa that Mr. Iwamasa had not previously disclosed to law enforcement—a fact illustrating how Mr. Fleming also served an important role by keeping the government's other key cooperator in this case honest; and

(6)    Mr. Fleming's cooperation extended to other individuals, in particular Individual #1 and Individual #2, who the government could have prosecuted for their role in trafficking drugs to Mr. Perry but chose not to prosecute.

When these facts are coupled with the reality that Mr. Fleming was the least culpable of the individuals the government chose to prosecute and the most valuable cooperator in this case—given the singular role he played in ensuring the apprehension and conviction of Ms. Sangha—a five-level downward departure falls short of what is fair and what the record supports.

Properly crediting a cooperator who has assisted the government in extraordinary ways also serves important societal interests. It incentivizes others to come forward in criminal cases and rewards the kind of immediate, unconditional cooperation Mr. Fleming provided. Conversely, undervaluing cooperation—as the government does here—creates disincentives for future cooperation, particularly

Kendall Brill
& Kelly LLP

10100 Santa Monica Blvd.
Suite 2500
Los Angeles, CA 90067

604498336

6

DEFENDANT ERIK FLEMING'S RESPONSE TO GOVERNMENT'S SENTENCING MEMORANDUM

when potential cooperators know that coming forward will thrust them into the public spotlight and stigmatize them in ways no reasonable person would willingly accept without meaningful recognition in return.

The Court should exercise its discretion to award a downward departure that more accurately reflects the full scope and value of Mr. Fleming's cooperation — one of no fewer than eight to ten levels.

## III. THE GOVERNMENT'S SENTENCING RECOMMENDATION UNDERVALUES MR. FLEMING'S MITIGATING FACTORS AND OVERVALUES PURPORTED AGGRAVATING FACTORS THE GOVERNMENT CITES

### A. The Government Ignores the Exceptional Mitigating Factors Present in Mr. Fleming's Case, Including § 3553 Factors that the Court Must Consider

The government's sentencing memorandum entirely ignores the unique and exceptional mitigating factors present here. Section 3553(a)(1) requires the Court to consider not just the nature and circumstances of the offense, but the history and characteristics of the defendant. On that score, the government's sentencing memorandum is entirely silent. Even specific statutory § 3553(a) factors that the Court must consider, and that undisputedly weigh in Mr. Fleming's favor—such as the absence of any ongoing danger to the community Mr. Fleming poses and the lack of any need for specific deterrence—are omitted entirely. The fact that Mr. Fleming waived indictment and agreed to a pre-indictment plea, a fact the government routinely cites to incentivize defendants to waive indictment and conserve resources, similarly goes unmentioned. It also identifies Mr. Fleming's professional background only as an aggravating factor and otherwise treats his history as irrelevant. That is not a complete sentencing analysis, and it is not the analysis this Court is required to perform or that Mr. Fleming anticipates the Court will perform. Once the full § 3553(a) factors are accounted for, along with Mr. Fleming's exceptional cooperation, the Court should impose Mr. Fleming's

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 2500
Los Angeles, CA 90067

604498336

7

DEFENDANT ERIK FLEMING'S RESPONSE TO GOVERNMENT'S SENTENCING MEMORANDUM

requested sentence of three months in custody to be followed by a substantial period of time on supervised release that includes, as a material condition, requiring Mr. Fleming to undergo the intensive drug treatment he needs.

Mr. Fleming's background is unique and overwhelmingly mitigating. This Court may never again sentence a federal drug defendant whose involvement in dealing drugs was limited to 11 days and consisted of brokering the sale of personal use quantities of a Schedule III Controlled Substance to a single customer. Most federal drug defendants, even those with limited criminal histories, come to the government's attention because the extent of their activities inevitably brings them into the government's crosshairs; and the charged conduct may have just been the first time they were caught. Mr. Fleming is unique in this regard in that the charged federal criminal drug conduct is the full extent of his drug distribution activity over the course of his more than five decades on this Earth.

In addition, the aberrational nature of Mr. Fleming's admittedly serious conduct in this case is clear. The letters submitted on Mr. Fleming's behalf—from family members, colleagues, spiritual leaders, mental health professionals, and friends spanning decades—paint a consistent and detailed portrait of a man whose life has been defined by genuine care for others. These are not form letters. They describe specific acts of kindness, loyalty, and generosity observed across every phase of Mr. Fleming's life and someone who, despite a childhood marked by maternal abandonment, emotional instability, and years of cycling between households, developed into a person of unusual warmth and sensitivity. They describe a man who turned that difficult early history into a career devoted to helping others navigate the same struggles he had faced himself.

Furthermore, this Court should consider that Mr. Fleming's aberrational conduct did not occur in a vacuum. It occurred at the precise moment when every stabilizing force in his life had collapsed simultaneously: His stepmother—the person he described as his best friend, the woman who had rescued him from the

Kendall Brill
& Kelly LLP

10100 Santa Monica Blvd.
Suite 2500
Los Angeles, CA 90067

604498336

8

DEFENDANT ERIK FLEMING'S RESPONSE TO GOVERNMENT'S SENTENCING MEMORANDUM

instability of his childhood—died after a prolonged battle with brain cancer, with Mr. Fleming at her bedside for the final four months of her life; he relapsed into heavy drug use; he fell into a deep depression; and he was broke, jobless, and living on his sister's couch.  It was amidst this horrible confluence of events, and at the lowest point of Mr. Fleming's life, that a close friend of thirty years called and pulled him into the events that led to this prosecution.  None of that excuses what Mr. Fleming did, and he has never suggested otherwise.  However, § 3553(a)(1) requires this Court to understand how a person of Mr. Fleming's character came to be standing before it, and that story cannot be told honestly without this context. The government chose not to acknowledge that story.  This Court should.

Finally, the government's § 3553 analysis falls short in meaningfully analyzing Mr. Fleming's relative culpability when compared to others involved in supplying Mr. Perry with ketamine, especially insofar as the government compared Mr. Fleming's culpability with that of Dr. Plasencia.  The government's recommended sentence of 30 months places Mr. Fleming on equal footing with Dr. Plasencia — a result the record cannot support.  The government justifies this equivalence by noting that both defendants ended up in the same sentencing range after accounting for their respective adjustments.  But that arithmetic obscures the fundamental differences between these two men, their conduct, their moral culpability for their actions, and their choices in the aftermath of that conduct.

Dr. Plasencia was a licensed physician who met Mr. Perry and immediately began calculating how to profit from his addiction, scheming with Dr. Chavez about how they could combine to take advantage of a man in the throes of addiction who Dr. Plasencia callously labeled a "moron."  He sold ketamine to Mr. Perry repeatedly, pocketed tens of thousands of dollars in doing so, and continued selling ketamine to Mr. Perry even after witnessing Mr. Perry suffer an adverse reaction after being injected with ketamine.  Mr. Fleming, by contrast, was a desperate man suffering through the worst period of his life who made a reckless choice across

Kendall Brill & Kelly LLP

10100 Santa Monica Blvd. Suite 2500 Los Angeles, CA 90067

604498336

9

DEFENDANT ERIK FLEMING'S RESPONSE TO GOVERNMENT'S SENTENCING MEMORANDUM

eleven days at the behest of a close friend, earned approximately $2,000 after making that choice, and has spent every day since trying to atone for that mistake.

Dr. Plasencia never cooperated with the government. By contrast, from the moment law enforcement first made contact with him, Mr. Fleming cooperated fully, immediately, and without the benefit of counsel. That cooperation — which the government's own § 5K1.1 motion acknowledges—was the foundation of the prosecution against Ms. Sangha, the most culpable defendant in this case, who received 180 months. Dr. Plasencia contributed nothing to that outcome.

Sentencing Mr. Fleming to the same term as Dr. Plasencia does not avoid an unwarranted disparity—it creates one. It treats a first-time, non-violent defendant who provided extraordinary cooperation as the equivalent to a licensed professional who exploited his credentials, his patient, and his position of trust, and who gave the government nothing in return after doing so.[3] The requested sentence of three months, followed by nine months in residential drug treatment, is a sentence that accurately reflects where Mr. Fleming stands relative to his co-defendants—far below Plasencia, far below Sangha, and in a category defined by an immediate acceptance of responsibility, extraordinary cooperation, and genuine rehabilitation

---

[3]  The sole aggravating factor distinguishing Mr. Fleming's case from Dr. Plasencia's case—that Mr. Fleming delivered the ketamine supplied by Ms. Sangha that directly led to Mr. Perry's death—is certainly a valid consideration. However, even that consideration does not provide a compelling basis to treat Mr. Fleming and Dr. Plasencia identically because (a) as a medical doctor who personally witnessed Mr. Perry experience a serious, negative medical reaction to ketamine use, Dr. Plasencia was much more aware of the risk that ketamine use posed to Mr. Perry than Mr. Fleming was; and (b) as the actors who set Mr. Perry on his path of an addiction to ketamine that ultimately led to his death, Dr. Plasencia and Dr. Chavez, are no less responsible for the tragic outcome in Mr. Perry's case than Mr. Fleming and their offense conduct certainly did not feature any moral culpability less than Mr. Fleming's conduct.

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 2500
Los Angeles, CA 90067

604498336

10

DEFENDANT ERIK FLEMING'S RESPONSE TO GOVERNMENT'S SENTENCING MEMORANDUM

that no other defendant in this case can claim.[4]

**B.     The Government Overstates the Purported Aggravating Factors It Claims Justifies Its Sentencing Recommendation**

At the same time the government's recommendation ignores or discounts mitigating factors that favor granting Mr. Fleming a lower sentence, the government leans far too hard into purported aggravating factors that do not distinguish Mr. Fleming's situation from that of any defendant convicted of a drug trafficking crime or that are already fully accounted for in the calculation of the Sentencing Guidelines that serves as the starting point for Mr. Fleming's sentence.

First, the government overstates the supposed aggravating weight of Mr. Fleming's background as a drug counselor.  The government draws an analogy to the doctors in this case — professionals who exploited their medical credentials to fuel the very mechanism of their offenses.  That analogy does not hold.  Mr. Fleming did not use his counseling background to facilitate, conceal, or further his conduct in any way.  The relevance of that training, if any, is simply that Mr. Fleming was aware of the dangers of drug abuse.  The same could be said, however, for almost every criminal defendant, all of whom ignored some known risk in order to engage in criminal conduct that could be harmful.

Second, the fact that Mr. Fleming dealt drugs for a profit and appeared willing to continue to supply the ketamine Mr. Perry wanted is also not aggravating—at

---

[4]   As reflected in his Presentence Report, Mr. Fleming did acknowledge that he took methamphetamine on one occasion very early during his pre-trial supervision following the death of his biological mother in September 2024.  However, since that time, Mr. Fleming has attended literally hundreds of AA meetings, has completed a rigorous 12-step program, and he refrained entirely from using drugs. Last Fall, Mr. Fleming was informed that he tested positive for codeine.  Mr. Fleming denied the accuracy of that test, and he felt so strongly about this denial that, at his own expense, he paid for an independent laboratory to conduct a separate drug screening of him.  That test came back negative in all respects.  *See* Exhibit A.

**Kendall Brill & Kelly LLP**
10100 Santa Monica Blvd.
Suite 2500
Los Angeles, CA 90067

604498336

11

DEFENDANT ERIK FLEMING'S RESPONSE TO GOVERNMENT'S SENTENCING MEMORANDUM

least not in a way that materially distinguishes Mr. Fleming from just about every other defendant charged with a drug trafficking crime.  What makes Mr. Fleming unique is the lack of any actual history of drug dealing that he engaged in either before or after the 11 day period in October 2023 when he helped procure personal use quantities of ketamine for a single person.  This draws a sharp distinction between Mr. Fleming and defendants like Ms. Sangha, who had a long history of dealing drugs before she encountered Mr. Fleming—including an occasion when she sold ketamine that resulted in at least one person's death—and  continued dealing drugs, without any involvement of Mr. Fleming whatsoever, even after Mr. Perry's death.

Lastly, the most aggravating factor that appears to be driving the government's sentencing recommendation in all respects—the tragic death of Mr. Perry—is already fully accounted for in the Sentencing Guidelines calculation Mr. Fleming faces, and no higher adjustment to his sentence is needed to account for it.  Mr. Fleming has never sought to minimize his unintended role in this tragedy, and the law is punishing him accordingly for that role.  Under the Sentencing Guidelines, the fact that Mr. Fleming's offense resulted in Mr. Perry's death mandates setting Mr. Fleming's base offense level under the Sentencing Guidelines at offense level 26, rather than offense level 8, which the base offense level triggered by the total quantity of ketamine he delivered to Mr. Iwamasa[5]; it further

---

[5]   Mr. Fleming delivered a total of 51 ten milliliter vials of ketamine to Mr. Iwamasa.  Under the Sentencing Guidelines, that is the equivalent of 1050 "units" of ketamine (as each "unit" of ketamine consists of .5 milliliter of the drug).  U.S.S.G. § 2D1.1, Application Note to Drug Quantity Table F.  A defendant involved in the distribution of 1050 units of ketamine barely crosses the threshold of a defendant whose base offense level must be set at base offense level 8 under the Sentencing Guidelines.  *See* U.S.S.G. § 2D1.1(c)(16) (a base offense level of 8 is triggered by drug trafficking conduct involving "[a]t least 1,000 but less than 2,500 units of Ketamine").  Since ketamine distribution cases are so rarely charged in the Central District of California—indeed, according to 2025 data collected by the United States

Kendall Brill
& Kelly LLP

10100 Santa Monica Blvd.
Suite 2500
Los Angeles, CA 90067

604498336

12

DEFENDANT ERIK FLEMING'S RESPONSE TO GOVERNMENT'S SENTENCING MEMORANDUM

costs Mr. Fleming safety valve eligibility, which would have reduced his offense level by two additional levels; and it also makes Mr. Fleming ineligible for zero-point offender credit, which would have reduced his Sentencing Guideline range by another two offense levels.  Together, those lost credits represent a 22-level penalty the Guidelines have already imposed on Mr. Fleming for the unintended harm his conduct caused.[6]  Thus, the Sentencing Guidelines, which are the starting point for the Court's analysis, have already fully accounted for the most aggravating of factors present in Mr. Fleming's case, but, of course, have not factored in Mr. Fleming's unique circumstances captured under a § 3553 analysis, which the Court must fully conduct at sentencing.

In sum, the mitigating factors in Mr. Fleming's case are exceptional and, in combination, genuinely rare.  The aggravating factors, by contrast, are either already captured in his Sentencing Guidelines calculation or are boilerplate observations that could apply to virtually any drug case.

---

Sentencing Commission for the Central District of California, cases involving the distribution of ketamine represented an unknown subset of less than 1.8% of all the drug trafficking cases charged in the Central District of California in 2025—it is unclear how many drug trafficking cases involving ketamine have been charged in the Central District of California outside of those linked to Mr. Perry's death, let alone cases involving an amount of ketamine the Sentencing Guidelines treat as the equal to 1 to 2.5 kilograms of marijuana.  *See* United States Sentencing Guidelines Commission, 2025 Federal Sentencing Statistics for the Central District of California, Figure B  (accessible at www.ussc.gov/sites/default/files/pdf/research-and-publications/federal-sentencing-statistics/state-district-circuit/2025/cac25.pdf).

[6]   None of this is to say that the Sentencing Guidelines calculation in Mr. Fleming's case incorrectly sets his starting adjusted offense level at offense level 23.  The point is that this offense level—and how drastically it balloons because Mr. Fleming delivered ketamine that resulted in Mr. Perry's death—fully accounts for that significant, aggravating factor.

Kendall Brill
& Kelly LLP

10100 Santa Monica Blvd.
Suite 2500
Los Angeles, CA 90067

604498336

13

DEFENDANT ERIK FLEMING'S RESPONSE TO GOVERNMENT'S SENTENCING MEMORANDUM

## IV.   CONCLUSION

Based on the foregoing, the defense respectfully requests that the Court sentence Mr. Fleming to three months imprisonment to be followed by a three year period of supervised release, which includes, as a condition, a nine month period of confinement in a residential drug treatment program.

DATED:  May 6, 2026                    KENDALL BRILL & KELLY LLP


By:       /s/ Robert E. Dugdale
         Robert E. Dugdale
         Jeffrey M. Chemerinsky
         Attorneys for Defendant Erik Fleming

**Kendall Brill
& Kelly LLP**
10100 Santa Monica Blvd.
Suite 2500
Los Angeles, CA 90067

604498336                           14

DEFENDANT ERIK FLEMING'S RESPONSE TO GOVERNMENT'S SENTENCING MEMORANDUM

## PROOF OF SERVICE

**STATE OF , COUNTY OF LOS ANGELES**

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Los Angeles, State of . My business address is 10100 Santa Monica Blvd., Suite 2500, Los Angeles, CA 90067.

On May 6, 2026, I served true copies of the following document(s) described as **DEFENDANT ERIK FLEMING'S RESPONSE TO THE GOVERNMENT'S SENTENCING MEMORANDUM [DKT. 43]** on the interested parties in this action as follows:

Michelle Wang United States Probation Office Santa Ana, California Phone: (714) 338-2919 E-mail: Michelle_Wang@cacp.uscourts.gov

**BY E-MAIL OR ELECTRONIC TRANSMISSION:** I caused the document(s) to be sent to each interested party at the email addresses listed above or on the attached service list.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on May 6, 2026, at Los Angeles, California.

*Carla K. Rossi*

Carla K. Rossi

Kendall Brill
& Kelly LLP

10100 Santa Monica Blvd.
Suite 2500
Los Angeles, CA 90067

604498336

15

DEFENDANT ERIK FLEMING'S RESPONSE TO GOVERNMENT'S SENTENCING MEMORANDUM